**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edmund Robbins JACKSON, also known as Ed Lee Robbins, Defendant-Appellant.**

**No. 30430.**

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1971.

Certiorari Denied Feb. 22, 1972.

See 92 S.Ct. 978.

Reginald L. Middleton, Jr., Dallas, Tex. (Court Appointed), for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Willis T. Taylor, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Edmund Robbins Jackson was convicted of violating 18 U.S.C. § 1343, which makes it a crime to use interstate telephone wires for the purpose of execut-

ing a scheme to defraud.[1] Jackson contends that neither the indictment under which he was charged nor the proof adduced at trial made out a violation of the Wire Fraud Statute, so that it was error for the District Court to deny his motion to dismiss the indictment and his motion for judgment of acquittal. We affirm the conviction.[2]

## I. The Evidence

The evidence tracked the facts set forth in the indictment.[3] It showed that

---

1. 18 U.S.C. § 1343. Fraud By Wire, Radio, or Television.

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. Though Jackson is represented before this court by court-appointed counsel, he has filed an additional brief *pro se*. In it he claims that his conviction was procured through the use of perjured testimony, that the government suppressed evidence favorable to him, and that his trial counsel was ineffective. There is no support in the record for any of these contentions.

3. The Grand Jury charges:

COUNT I

1. Beginning on or about May 15, 1969, and continuing thereafter to on or about June 9, 1969, within the Northern District of Texas and elsewhere, Edmund Robbins Jackson, also known as Ed Lee Robbins, defendant, did devise and intend to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses and representations.

2. Such scheme and artifice, so devised and intended to be devised by the defendant, was in substance as follows:

A. On or about May 23, 1969, the defendant would go to the Texas Bank and Trust Company of Dallas, Dallas, Texas, and would take with him certain municipal bonds;

B. The defendant would meet with Bob Houston, Assistant Vice-President and Commercial Loan Officer, New Accounts Department, Texas Bank and Trust Company of Dallas and would represent himself to be Ed Lee Robbins;

C. The defendant would apply to open a checking account with such bank;

D. He would present to Bob Houston and Texas Bank and Trust Company of Dallas stolen municipal bonds each payable to the bearer, each with the maturity date of May 15, 1969, and worth the aggregate sum of $65,000.00; to wit: * * * [list of bonds omitted].

E. He would falsely an fraudulently pretend and represent to Bob Houston and Texas Bank and Trust Company of Dallas that he was the true owner of such bonds, when as the defendant well knew, such bonds had been stolen;

F. He would falsely and fraudulently pretend and represent to Bob Houston and Texas Bank and Trust Company of Dallas that such bonds were fully negotiable, when as the defendant well knew, such bonds were not negotiable;

G. The defendant would arrange with Bob Houston for such bank to take custody of the bonds, collect the monies due on them and credit the sums collected to his checking account with the bank;

H. The defendant would leave the bank and go to Tulsa, Oklahoma;

I. On or about June 6, 1969, at Tulsa, Oklahoma, the defendant would place a telephone call to Bob Houston at the Texas Bank and Trust Company of Dallas, Dallas, Texas, and inquire as to whether or not payment for the bonds had been deposited to his checking account;

J. On or about June 9, 1969, the defendant would travel from Tulsa, Oklahoma, to Dallas, Texas, for the purpose of obtaining the proceeds derived from the cashing of the bonds.

3. Having devised and intended to devise the aforesaid scheme and artifice to defraud and obtain money by means of false pretenses and representations, the defendant, Edmund Robbins Jackson, also known as Ed Lee Robbins, for the purpose of executing such scheme and artifice, did on or about June 6, 1969, transmit and cause to be transmitted sounds; that is, voice communications by means of wire communication in interstate commerce between Tulsa, Oklahoma, and Dallas, Texas, in the Northern District of Texas.

A violation of Title 18, United States Code, Section 1343.

A TRUE BILL

in the late afternoon of May 23, 1969, the defendant, identifying himself as "Ed Lee Robbins," went to the Texas Bank and Trust Company in Dallas and asked to open a checking account. He had with him some $65,000 worth of municipal bonds, all in bearer form. Defendant advised the bank officer who was handling his new account that he wished to leave the bonds with the bank so that it could collect the money due on them and deposit this money to his account.

That same day, May 23rd, the Mercantile Bank of Dallas discovered that $66,000 worth of municipal bonds were missing from its storage vault. These bonds had been paid, but had not been cancelled. On their face they appeared to be fully negotiable and payable to bearer. The bonds missing from the Mercantile Bank were the same ones presented to the Texas Bank and Trust Company by defendant.

The opening of Jackson's bank account was handled by Mr. Robert Houston, an Assistant Vice President of the Bank. Before leaving the bank on the evening of May 23rd, Jackson informed Mr. Houston that he travelled and would telephone Mr. Houston about his account within a week or so. On June 6, 1969, Jackson made a long distance call from Tulsa, Oklahoma, to Mr. Houston in Dallas. Again identifying himself as Ed Lee Robbins, he asked whether or not his account had been opened. Houston responded that it was necessary to have some additional forms signed. On June 9, 1969, Jackson traveled from Tulsa to Dallas, where he was arrested by agents of the FBI.

## II. The Argument

The single legal point of defendant's argument, raised at every stage of the proceeding,[4] is that the telephone call from Tulsa, Oklahoma, to Dallas, Texas, was not an act prohibited by § 1343. He argues that the call was merely made for the purpose of inquiring about the opening of defendant's bank account.[5] He says that this was a legitimate call between client and his bank and had nothing to do with an alleged fraudulent scheme, if one existed.

## III. The Decision

Defendant's conviction stands or falls on the determination of whether or not the telephone call was made for the purpose of "executing such scheme or artifice."

■ The Wire Fraud Statute does not require that the scheme be successful, or even that the victim be deceived. It need only be shown that there was a scheme and that interstate wires were "used as a step in the execution of the scheme" Huff v. United States, 301 F.2d 760, 765 (5th Cir.1962), cert. den., 371 U.S. 922, 83 S.Ct. 289, 9 L.Ed.2d 230; Roberts v. United States, 226 F.2d 464 (6th Cir.1955), cert. den., 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 817.

■ The evidence shows that Jackson's telephone call was a part of the scheme from its inception. Before he left the Texas Bank and Trust Company

---

4. Defendant's motions to dismiss the indictment, for judgment of acquittal and for new trial were all directed to this single argument.

5. On cross-examination, the bank officer testified as follows:
   "Now you say that somebody called from Tulsa and inquired if an account had been opened, that's all the inquiry was about?
   A Correct, to see if the proceeds of these bonds had been deposited to the account.
   Q In other words, there was two questions, whether or not the account had

been opened, and whether or not the proceeds of the bonds had been put in?
   A Right, they are one and the same.
   Q Are you sure about that, are you sure about it?
   A Well, they are really one and the same.
   Q I beg your pardon?
   A They were asking had the account been opened, that's correct.
   Q He wasn't going to open the account unless the money came in down here?
   A That's correct."

on May 23rd, Jackson told Mr. Robert Houston that he traveled and that he would be calling. Since Jackson would be unable to withdraw any of the proceeds of the stolen municipal bonds until they had been cashed and his account had been opened, it was impossible for him to consummate his scheme without ascertaining whether or not the money was in his account. This information was indispensable to complete the execution of the scheme. It could have been obtained by a personal visit to the bank, or by an intrastate telephone call, without violating this law. But it was not. Defendant's call was made in interstate commerce and thus ran afoul of the federal law.[6]

The indictment properly charged a violation of 18 U.S.C. § 1343, and the evidence, viewed in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942), was sufficient to support the jury's verdict of guilty.

Affirmed.

---

6. This views the call as a mere inquiry, as argued by defendant. It also could be fairly inferred that the purpose of the call was to stimulate the bank into completing its part of the transaction.